PILLSBURY WINTHROP SHAW PITTMAN LLP
PATRICK HAMMON (255047)
patrick.hammon@pillsburylaw.com
2400 Hanover Street
Palo Alto, California 94304-1113
Telephone: 650.233.4500
Facsimile: 650.233.4545

PILLSBURY WINTHROP SHAW PITTMAN LLP
ANDREW J. WU (326268)
andrew.wu@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, California 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200

Attorneys for Defendant,
SNAP INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION – LOS ANGELES**

TREVOR CHARLES, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

SNAP INC.

Defendant.

Case No. 2:26-CV-04928-SPG-SK

**DEFENDANT SNAP INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: September, 2026
Time: 1:30 p.m.
Location: Ctrm. 5C, 5th Floor
Judge: Hon. Sherilyn Peace Garnett

TO THE HONORABLE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 16, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Snap Inc. ("Snap") will move the Court for an order dismissing Plaintiff Trevor Charles' ("Plaintiff's") Complaint.

Snap's Motion is based on this notice, the attached memorandum of points and authorities, the Declarations filed concurrently herewith, the [Proposed] Order lodged concurrently herewith, and upon such other argument as the Court may consider before or at the hearing on this motion.

Dated: August 17, 2026

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Patrick Hammon*
PATRICK HAMMON
ANDREW J. WU

Attorneys for Defendant,
SNAP INC.

# TABLE OF CONTENTS


INTRODUCTION .......... 8

RELEVANT ALLEGATIONS .......... 9

LEGAL STANDARD .......... 11

ARGUMENT .......... 11

I. PLAINTIFF LACKS ARTICLE III STANDING .......... 11

A. Plaintiff Does Not Allege a Concrete Injury .......... 12

1. Plaintiff Fails to Allege Any Disclosure of His Own Private Information .......... 12

2. The Alleged Tracking of Basic Website Interactions Does Not Constitute a "Highly Offensive" Intrusion .......... 15

3. Allegations of Hypothetical "Profile Building" Do Not Establish a Concrete Harm .......... 16

B. Plaintiff's Implausible Allegations Do Not Confer Article III Standing .......... 18

II. PLAINTIFF FAILS TO STATE A CLAIM FOR INTRUSION UPON SECLUSION .......... 18

A. No Reasonable Expectation of Privacy .......... 19

B. No Highly Offensive or Egregious Conduct .......... 20

III. PLAINTIFF FAILS TO STATE AN ECPA CLAIM .......... 22

A. Standards for Interpreting the ECPA .......... 22

B. No Protectable "Contents" of Communications .......... 23

C. The One-Party Consent Exemption Bars Plaintiff's Claim .......... 25

D. No Contemporaneous Interception "In Transit" .......... 25

CONCLUSION .......... 27

# TABLE OF AUTHORITIES

## Cases

*Adler v. Community.com*
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 26, 27

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 11

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 570 (2007) .......... 11

*Byars v. Sterling Jewelers, Inc.*
2024 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 15

*Carolus v. Nexstar Media Inc.*
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 13

*Cheung v. Slickdeals, LLC*
2026 WL 1872831 (C.D. Cal. June 29, 2026) .......... 13

*Daniels-Hall v. Nat'l Educ. Ass'n*
629 F.3d 992 (9th Cir. 2010) .......... 18

*Doe I v. Google LLC*
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 25

*Doe v. Eating Recovery Ctr. LLC*
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 23

*Hammerling v. Google, LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 23

*Harrott v. County of Kings*
25 Cal.4th 1138, 1154 (2001) .......... 22

*Heiting v. FKA Distrib. Co.*
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 15

*Hernandez v. Hillsides, Inc.*
47 Cal.4th 272 (2009) .......... 19

*Herzman v. Smile Brands Inc.*
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) .......... 15

*Hill v. Nat'l Collegiate Athletic Ass'n*
7 Cal.4th 1 (1994) ........ 19

*Hubbard v. Google LLC*
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 20

*Hughes v. Vivant*
2024 WL 5179916 (C.D. Cal. July 12, 2024) ........ 14, 17, 23

*I.C. v. Zynga, Inc.*
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 19

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ........ 18, 19, 20

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 21, 24

*In re Yahoo Mail Litig.*
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 20, 25

*In re Zynga Priv. Litig.*
750 F.3d 1098 (9th Cir. 2014) ........ 19, 23

*Khamooshi v. Politico LLC*
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 12, 15, 24

*King v. Hard Rock Cafe Int'l (USA), Inc.*
2025 WL 1635419 (E.D. Cal. June 9, 2025) ........ 24

*Kishnani v. Royal Caribbean Cruises, Ltd.*
2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 17

*Konop v. Hawaiian Airlines, Inc.*
302 F.3d 868 (9th Cir. 2002) ........ 26

*Langer v. Kiser*
57 F.4th 1085 (9th Cir. 2023) ........ 11

*Leocal v. Ashcroft*
543 U.S. 1 (2004) ........ 22

*Licea v. Am. Eagle Outfitters, Inc.*
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 22, 26

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 20

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) .......... 12

*Magliocca v. United Healthcare Servs., Inc.*
2026 WL 878694 (E.D. Cal. Mar. 31, 2026) .......... 16

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 12, 15

*Noel v. Hall*
568 F.3d 743 (9th Cir. 2009) .......... 26

*Pena v. GameStop, Inc.*
670 F.Supp.3d 1112 (S.D. Cal. 2023) .......... 25

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) .......... *passim*

*Price v. Converse, Inc.*
805 F. Supp. 3d 1102 (C.D. Cal. 2025) .......... 21

*Roberts v. Corrothers*
812 F.2d 1173 (9th Cir. 1987) .......... 24

*Rodriguez v. Brushfire Recs.*
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 13, 16

*Rosenow v. Facebook, Inc.*
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) .......... 27

*Sisti v. Bosley Inc.*
831 F. Supp. 3d 979 (C.D. Cal. 2026) .......... 26

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .......... 12

*Tash v. Vision Service Plan*
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) .......... 13

*Thomas v. Papa Johns Int'l, Inc.*
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 21

*Torres v. SeatGeek, Inc.*
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 16, 21

*Warden v. Kahn*
99 Cal.App.3d 805 (1979) .......... 22

*Wooten v. BioLife Plasma Servs., L.P.*
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 16

*Yoon v. Lululemon USA, Inc.*
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 24

*Zbitnoff v. Nationstar Mortgage*, LLC
2014 WL 1101161 (N.D. Cal. Mar. 18, 2014) .......... 20

**Statutes**

18 U.S.C. § 2510 .......... 22

18 U.S.C. § 2511 .......... 11

## INTRODUCTION

This case is not about an injury actually suffered by Plaintiff; indeed, it is not really about any injury suffered by anyone at all. At its core, this case is just another one of Plaintiff's counsel's self-serving attempts at transforming routine online advertising technology into ***criminal*** wiretapping through generalized allegations about what those technologies supposedly ***could*** do, rather than what ***actually*** happened to their client.

The Complaint never bridges that gap. Here, Plaintiff Trevor Charles ("Plaintiff") never alleges what, if any, personal financial, health, religious, or otherwise sensitive information ***he*** disclosed to any website at any point in time, nor does he identify what sensitive information of ***his*** was actually collected by Defendant Snap Inc. ("Snap"). The only allegation concerning his supposed experience is that his email address, phone number, and device information were collected. However, the law is clear that capturing such non-sensitive user information does not confer Article III standing. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Plaintiff's failure to allege that he suffered any cognizable privacy invasion is fatal to his claims.

Plaintiff asks this Court to find that the use of ordinary advertising technologies on everyday websites amounts to criminal wiretapping and an egregious breach of social norms. But if Plaintiff's theory were correct, then virtually every website operator is a criminal, since the use of advertising technology is ubiquitous on modern-day websites. Other website operators that use similar pixel technology challenged in this case—and who are therefore criminals under Plaintiff's theory—include nonprofit organizations such as Make-a-Wish, Greenpeace, and the ASPCA, as well as professional organizations like Plaintiff's own counsel of record.

The Court should dismiss the Complaint in its entirety for a variety of reasons.

First, Plaintiff lacks Article III standing because (i) he never identifies any specific personal or sensitive information that ***he*** actually disclosed to any website at any point in time; (ii) the disclosure of basic contact or device-level information does

not confer standing; and (iii) his hypothetical and otherwise conclusory allegations regarding consumer "profile building" do not somehow convert those actions into an injury-in-fact.

Second, even if Plaintiff could establish standing (he cannot), his intrusion upon seclusion claim fails as a matter of law because (i) courts have uniformly concluded that there is no reasonable expectation of privacy in basic web traffic activity, and (ii) courts in this Circuit have repeatedly held that the collection of routine commercial information of the kind alleged here is not "highly offensive" or an "egregious breach of social norms."

Third, his claim under the Electronic Communications Privacy Act ("ECPA") fails for multiple reasons. The information Plaintiff alleges was collected—email addresses, phone numbers, and device data—is unprotected "record" information rather than protectable communication "contents" under ECPA. And even if the information transmitted to Snap via the pixel constituted protectable "content" under ECPA (which it does not), then the website operator was a party to that "communication" as the intended recipient. There can be no ECPA violation where the website operator, as a party to the communication, consented to sharing its contents with Snap through the pixel. Finally, the Complaint does not plausibly allege that any interception occurred "contemporaneously" while a communication was "in transit," as ECPA requires. Each of these deficiencies is independently fatal, and together they confirm that dismissal is warranted.[1]

## RELEVANT ALLEGATIONS

Plaintiff Trevor Charles, who alleges that he "does not have a Snapchat account," Compl. ¶ 5, brings this putative class action against Snap, broadly challenging its internet advertising practices. Those practices include the development

[1] Snap brings this motion to the extent the Court is inclined to maintain this action in this District in response to Snap's Motion to Transfer Venue to the Northern District of California, filed concurrently herewith.

of the Snap Pixel, which Snap's advertisers embed on their websites. The Snap Pixel is described as a piece of code that tracks website visitor behavior and sends that data back to Snap for commercial and advertising purposes. *Id.* ¶¶ 22-23. According to Plaintiff, the Snap Pixel captures customer contact information such as emails and phone numbers, and website activity such as URLs visited and button clicks. *Id.* ¶¶ 63, 67, 70-71, 78. Snap then allegedly combines this information through "ID Bridging" and "Identity Resolution" to match a website visitor's activity to their larger record of web and Snapchat activity for the purpose of displaying targeted advertisements to those users. *Id.* ¶¶ 54, 97, 100, 154.

Although Plaintiff spends a good deal of time explaining how the Snap Pixel works and the sort of data it ***might*** transmit to Snap, he spends very little time explaining what data he actually shared with websites containing the Snap Pixel. As for his own purported "experience," Plaintiff alleges he "visited multiple websites" where the Snap Pixel was present, but he identifies only two specific websites that he "visited": Thursdayboots.com and Zillow.com. *Id.* ¶¶ 152-153. He does not allege when he visited either website or what sensitive information, if any, he provided in his own interactions with either website. *Id.* He claims that the Snap Pixel embedded on both websites supposedly intercepted his website "communications" and collected his customer contact and device-level information. *Id.* Although Plaintiff identifies Western Union as an example website on which the Snap Pixel is present, Plaintiff does not allege that he ever visited the Western Union website or that he is a Western Union customer. Rather, his ***counsel*** (not Plaintiff) allegedly observed certain data flows showing the Snap Pixel collecting device and contact information of unidentified website users at unspecified times. *Id.* ¶¶ 142-151.

Plaintiff does not allege what email address, phone number, or other personal identifying information he shared with any website, or where he was located when he made such "visits." Nor does Plaintiff allege whether he completed any transactions on any website, or whether he shared with those websites any personal financial

information, personal health information, religious or political information, or other information.

Based on these sparse allegations, Plaintiff asserts two claims against Snap: (1) Intrusion Upon Seclusion, and (2) Violation of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2511). *Id.* ¶¶ 166-168, 173, 179, 196-197. He also purports to represent a class of all residents of any state other than California who visited, while outside California, a website where the Snap Pixel was present. *Id.* ¶ 159.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

**ARGUMENT**

**I. PLAINTIFF LACKS ARTICLE III STANDING**

Because Article III "limits our jurisdiction to cases and controversies, the 'irreducible constitutional minimum of standing' requires a plaintiff to have suffered an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Langer v. Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023) (quoting *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

The Ninth Circuit recently rejected the notion of a "free-roaming privacy right," and held that to establish Article III standing a plaintiff must allege a reasonable expectation of privacy in the information supposedly collected and articulate a harm that is "similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791. Simply alleging a violation of a privacy statute does not establish a concrete injury for Article III purposes. *Id.* at 792.

**A. <u>Plaintiff Does Not Allege a Concrete Injury</u>**

To establish Article III standing and survive a motion to dismiss, a "plaintiff must identify the ***specific personal information*** she disclosed that implicates a protectible privacy interest." *Mikulsky*, 682 F. Supp. 3d at 864; *see also Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025). In the context of claims arising from the alleged use of online tracking technologies, Article III standing depends on the ***nature of the plaintiff's information*** allegedly intercepted, not merely the fact that some data transmission occurred. *Popa*, 153 F.4th at 791.

**1. <u>Plaintiff Fails to Allege Any Disclosure of His Own Private Information</u>**

Plaintiff's standalone allegation that he "visited" two websites that had the Snap Pixel does not, in and of itself, establish an injury-in-fact. Compl. ¶ 152. He does not allege what, if any, information he actually shared with either Thursdayboots.com or Zillow.com—no purchasing information, no personal financial information, no other sensitive attributes. He never alleges that he shared his own name or other contact information with any website, much less any facts showing a privacy intrusion that is "highly offensive to a reasonable person." *Popa*, 153 F.4th at 791-92. Instead,

Plaintiff repeatedly relies on vague labels of "confidential" or "personal" information without specifying how ***his*** alleged "visits" to any website actually led to the disclosure of ***his*** private or sensitive information. *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (no Article III standing established where plaintiff merely alleged "that she visited the website"); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (to assert a privacy violation sufficient for Article III injury, the information disclosed must be "actually personal and private").

Ever since *Popa* clarified the threshold standing requirements for these website-tracking claims, courts have routinely dismissed such claims where plaintiffs fail to allege that any of their ***sensitive*** information was actually disclosed or collected. *See, e.g.*, *Cheung v. Slickdeals, LLC*, 2026 WL 1872831, at *9 (C.D. Cal. June 29, 2026) ("Vague references to 'browsing activity' and 'page interactions,'" without more, "are insufficient for the Court to infer that defendant's conduct 'caused her to experience any kind of harm that is remotely similar' to the 'highly offensive' interferences" described in *Popa*); *Tash v. Vision Service Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) (bare references to "search parameters" being collected, "[w]ithout describing the type of information contained in [plaintiff's] search parameters" or how it was 'embarrassing, invasive, or otherwise private,' . . . does not confer standing.") (citing *Popa*, 153 F.4th at 791).

If anything, Plaintiff's repeated references to unspecified "personal" information (*e.g.*, Compl. ¶¶ 52-53, 60, 113) or generalized "browsing activity" (*id.* ¶ 155) are more akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular." *Popa*, 153 F.4th at 791. Here, as in *Popa*, dismissal is appropriate because Plaintiff has failed to identify any "embarrassing, invasive, or otherwise private information" that ***he*** personally supplied to any website at any given time, much less that any such information was actually collected by the Snap Pixel based on his website activity, if any. *Id.*

Plaintiff tries to make up for these deficiencies by pointing to second-hand allegations based on his ***counsel's*** supposed "testing on several websites." *See, e.g.*, Compl. ¶¶ 131-151. This transparent effort to bolster those allegations by asserting more sensitive information that ***might*** have been shared for other internet users only underscores the allegations that are missing as to this Plaintiff. For instance, although the Complaint devotes substantial attention to alleged tracking associated with Western Union transactions, currency exchanges, and country-of-birth selections, Plaintiff does not allege that ***he*** used Western Union at all. Compl. ¶¶ 125, 142-151. Similarly as to Zillow: while ***counsel*** may allege that certain tracking ***could*** occur on Zillow's website (*id.* ¶ 152), Plaintiff himself offers no facts as to what personal information he actually shared with Zillow that was allegedly intercepted during his visit to Zillow's website. *Id.* ¶¶ 133-141.

Article III standing must rest on concrete and particularized injury that Plaintiff himself allegedly suffered; it cannot rest on allegations concerning counsel's observation of harm that might have been suffered by others. Courts have repeatedly held that these types of threadbare allegations fail to demonstrate Article III standing.

For example, in *Hughes v. Vivant*, the plaintiff asserted internet-tracking privacy claims based on allegations that the defendant deployed TikTok tracking software on its website. Similar to Plaintiff here, the *Hughes* complaint only generally described the types of information the challenged software was ***capable*** of collecting or analyzing. 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024). Even accepting those allegations as true, the court dismissed the claims for lack of standing because the complaint "d[id] not sufficiently explain what information ***of [p]laintiff's*** was captured, only what information ***could*** be captured." *Id.* (emphasis added). Just like Plaintiff here, the *Hughes* plaintiff "never allege[d] . . . that she entered ***her*** [personal information] into any fields on the Website so that the [technology] matching feature of the TikTok Software could capture ***her*** personalized information." *Id.* (emphasis added). Ultimately, because the plaintiff "d[id] not ***clearly allege*** what ***personalized***

information of ***hers*** was actually collected, she d[id] not identify any harm to her privacy" for Article III purposes. *Id.* at *5 (emphasis added).

Similarly, the plaintiff in *Byars v. Sterling Jewelers, Inc.* failed to establish Article III standing because she failed to allege that "***she*** disclosed any ***sensitive*** information to [d]efendant, much less identify any ***specific personal information she*** disclosed that implicates a protectable privacy interest." 2024 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (emphasis added). The Complaint here suffers from the same fundamental deficiency. It contains no specific facts identifying what sensitive or otherwise private information of Plaintiff's was actually disclosed or collected, nor does it contain "any specific allegations explaining what information [of his] was disclosed to [Snap]," or "what [specific] information [Snap] transmitted to [others]." *Herzman v. Smile Brands Inc.*, 2026 WL 1110698, at *3 (S.D. Cal. Apr. 23, 2026); *see also Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (dismissing privacy claim for lack of standing where plaintiff failed "to allege any basic facts from which the Court could infer a concrete injury, like when and how many times she visited the site, what information she provided, [or] what information Defendant captured").

Because Plaintiff never alleges that ***his*** personal information was actually disclosed or collected by Snap at any time on any website, the "Court is unable to determine whether [his] 'personal information" actually "trigger[ed] a protectable privacy interest" to confer Article III standing. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023).

### 2. <u>The Alleged Tracking of Basic Website Interactions Does Not Constitute a "Highly Offensive" Intrusion</u>

The sharing of non-sensitive information does not implicate a protectable privacy interest. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178-79 (N.D. Cal. 2025). Thus, Plaintiff's generalized allegations regarding the collection or disclosure of non-sensitive information such as IP addresses, emails, phone numbers,

button clicks, URLs, and other basic device information (*e.g.*, Compl. ¶¶ 31-80) do not cause any injury-in-fact in the privacy context. Courts routinely hold that the collection of such non-sensitive information fails to create a concrete harm envisioned by *Popa*. *See, e.g.*, *Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *4 (N.D. Cal. May 28, 2026) (dismissing complaint for lack of standing because "the information that was collected—IP addresses, device make/model/OS, browser type, and cookie identifiers—is record information where there is no reasonable expectation of privacy."); *Wooten v. BioLife Plasma Servs., L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (relying on *Popa* and concluding that plaintiff lacked standing because the "disclosure of one's email address and IP address . . . does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law."); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) ("Defendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website does not cause the kind of [concrete] harm that can be vindicated in federal court.") (citation omitted); *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026) (the alleged collection of URLs visited and IP addresses "bear[s] no resemblance to the detailed, sensitive data" to confer Article III standing, but rather, "resembles exactly the kind of non-sensitive browsing activity . . . that courts have repeatedly found insufficient to establish a concrete injury.").

**3. <u>Allegations of Hypothetical "Profile Building" Do Not Establish a Concrete Harm</u>**

Plaintiff's remaining allegations consist of abstract data collection and use scenarios that fail to establish an injury-in-fact as to Plaintiff himself. Plaintiff repeatedly invokes the specter of Snap building comprehensive consumer "profiles" by citing literature concerning so-called "shadow profiles" and alleging the supposed interaction between the Snap Pixel and a third-party's pixel technology. *See, e.g.*, Compl. ¶¶ 97-129. However, the Complaint does not allege what information was

***actually*** contained in any "profile" associated with Plaintiff, whether such a profile of Plaintiff existed, what sensitive attributes of Plaintiff it supposedly reflected, or whether any such profile of Plaintiff was ever disclosed to a third party.

Allegations concerning hypothetical or industry-wide "profiling" practices (or Snap's generalized advertising practices involving individuals other than Plaintiff) cannot be a substitute for factual allegations concerning Plaintiff's own purported injury based on the collection of his own personal, sensitive, or otherwise private information. *See Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (plaintiff's allegations about generalized personal information, "even [if] accepted as true and construed in Plaintiff's favor, does not sufficiently explain what information of Plaintiff's was captured, only what information ***could be*** captured.") (emphasis added); *Kishnani v. Royal Caribbean Cruises, Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) ("[T]hough Plaintiff alleges that Defendants . . . ***could*** intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into concrete harm to him.") (emphasis in original).

Even if the Court assumed the truth of Plaintiff's vague and conclusory allegations, the supposed "profile building" could not have happened with respect to Plaintiff himself because he has never been a Snapchat user. Insofar as Plaintiff alleges that Snap collects certain information from website operators via the Snap Pixel and "combines" or "matches" it with data Snap supposedly already has about a Snapchat user to create a "profile" on that individual (*e.g.*, Compl. ¶¶ 54, 95, 100-102), Plaintiff cannot establish a concrete injury as to himself because he has never been a Snapchat user (*id.* ¶ 5). There would be nothing for Snap to "match" or "combine"; Plaintiff's identity would not be connected with the anonymized information and therefore no harm could have plausibly occurred. *Hughes*, 2024 WL 5179916, at *5 ("If [p]laintiff does not have a TikTok account, then the [ID syncing process] would not produce any match, meaning Plaintiff's identity [at TikTok would not exist and] would not be connected with the anonymous information, and

seemingly no harm would have occurred.”).

There is simply nothing in the Complaint approaching the kind of “cradle-to-the-grave profile” comprising sensitive or personal details about Plaintiff sufficient to establish a concrete injury. *Cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (finding standing where Facebook allegedly captured a Facebook user’s browsing history and connected it to a personal Facebook profile, revealing one’s “employment history and political and religious affiliations” that created a “cradle-to-grave profile” of that user).

### B. Plaintiff’s Implausible Allegations Do Not Confer Article III Standing

Plaintiff’s inability to establish Article III standing is compounded by his own implausible and contradictory allegations. On the one hand, Plaintiff alleges he “visited” two websites, Thursdayboots.com (a shoe company) and Zillow.com. Compl. ¶ 152. On the other hand, Plaintiff alleges that Snap intercepted “communications”—from ***unspecified*** websites—regarding “restaurant preferences, health concerns, real estate interests, consumption of media, geolocation, and many more.” Compl. ¶ 190. It is unreasonable to infer that Plaintiff ***himself*** disclosed any of his own restaurant preferences, health concerns, or consumption of media to a shoe company like Thursday Boots or a real estate listing website like Zillow. *See Daniels-Hall v. Nat’l Educ. Ass’n*, 629 F.3d 992, 998 (9th Cir. 2010) (“The Court is not required to accept as true allegations in the complaint which are . . . merely conclusory, unwarranted deductions of fact, or unreasonable inferences.”). Regardless, Plaintiff never alleges that he actually disclosed any such personal preferences, concerns, or interests to any website at any point in time.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR INTRUSION UPON SECLUSION

Even if the Court concludes that Plaintiff has established Article III standing, his Complaint still fails to plausibly state an actionable claim for intrusion upon

seclusion. To state an intrusion claim, Plaintiff must allege facts showing that Snap "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" in a "manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009). Plaintiff has not plausibly alleged either element through well-pleaded facts.[2]

**A. <u>No Reasonable Expectation of Privacy</u>**

Courts typically evaluate a reasonable expectation of privacy based on the "customs, practices, and physical settings" surrounding a defendant's particular activities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 36 (1994). In the website-tracking context, website operators "routinely embed content from third-party servers" through "their use of analytics tools, advertising networks, code libraries and other utilities." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 846. Thus, there is no reasonable expectation of privacy in data that is voluntarily provided to a website for basic commercial purposes, such as customer identifying information, addressing information, or other basic device identifying information. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (no reasonable expectation of privacy in information that reveals basic identification and address information).

Yet that is precisely the kind of information over which Plaintiff claims to have a reasonable expectation of privacy based on the category of information that was purportedly captured by Snap. Compl. ¶ 153 ("identifying information such as his email address, phone number, and device information."). His intrusion upon seclusion claim should be dismissed on that basis alone. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (finding collection of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" to be insufficiently concrete to confer standing).

---

[2] Snap makes this argument to the extent the Court finds California law applies to the intrusion upon seclusion claim, and does so without waiver of any of its rights, including moving to dismiss or otherwise challenging the intrusion upon seclusion claim under a different state's law.

In terms of identifying a cognizable privacy interest, Plaintiff's remaining allegations fare no better. He broadly describes having an "interest in" protecting "sensitive" and "confidential" information, making "personal decisions," and "conducting personal activities without observation" online. Compl. ¶ 169. But generally describing an "interest in" website privacy—without articulating what specific information warrants such protection—fails to demonstrate a reasonable expectation of privacy as a matter of law. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (dismissing intrusion claim where plaintiff alleged information was "private," "sensitive," or "confidential" without specifying "***exactly what*** private information" was at stake) (emphasis added); *Zbitnoff v. Nationstar Mortgage*, LLC, 2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014) (same). At most, Plaintiff describes a generalized free-roaming interest that the Ninth Circuit has squarely rejected as a cognizable privacy interest. *See Popa*, 153 F.4th at 791. The intrusion claim should be dismissed.

**B. <u>No Highly Offensive or Egregious Conduct</u>**

Even if the Court reached the second element of an intrusion claim, Plaintiff cannot demonstrate the kind of "highly offensive" intrusion that constitutes an "egregious breach of social norms." *Facebook*, 956 F.3d at 606. This is an exacting standard—the threshold is so high that even disclosure of social security numbers does not satisfy it. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Plaintiff does not come close to satisfying this standard.

The Complaint merely alleges the collection of ordinary commercial website interactions and related activity rather than describing any egregious breach of social norms. For instance, while Plaintiff vaguely alleges that "internet and app activity" (from unspecified websites) was supposedly collected by Snap (through unspecified means) to learn (unspecified) information about class members' "daily lives" (Compl. ¶¶ 173-174), such allegations about standard web browsing activity are plainly insufficient to state a viable intrusion claim. *See Hubbard v. Google LLC*, 2024 WL

3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, ***and a reasonable user should expect as much***.") (emphasis in original).

Insofar as Plaintiff claims that IP addresses, emails, addressing information, geolocation, and other basic device information were collected, such information is nothing more than routine, public-facing information, the collection of which does not rise to the level of "egregious" or "highly offensive conduct." *See, e.g.*, *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1104-05 (C.D. Cal. 2025) (allegations that device, browser, and geographic information were used to deanonymize users and deliver "highly personalized" ads showed no "highly offensive" interference (cleaned up)); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (the disclosure of personal data, geolocation information, and name and identity was not "highly offensive" or "egregious breach of social norms," but rather "routine commercial behavior"); *Torres*, 2026 WL 1495202, at *6-7 (IP addresses, and email addresses did not constitute "embarrassing or sensitive data" that would "be highly offensive").

Plaintiff's own supposed website "visits" foreclose his intrusion claim. He claims to have visited the website of shoe retailer Thursdayboots.com (Compl. ¶ 153), while also alleging the collection of undisclosed "communications" and "personal activities" during that supposed visit constitutes an "egregious breach of social norms." *Id.* ¶¶ 172-174. It does not. Ordinary online shopping or internet browsing activity does not rise to the level of an intrusion upon seclusion claim because Plaintiff says so. *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) ("[s]hopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer."). Simply alleging that Snap collected or learned "intimate details"—without articulating how those details were intimate or how browsing an online shoe store could possibly reveal them—does not constitute an egregious breach of social norms either.

Plaintiff tries to convince this Court that "all aspects" of his personal life were supposedly collected by Snap when he visited a shoe retailer website (without purchasing anything or sharing any financial or personal information) and a real estate listing website (without sharing any sensitive or intimate information). That, however, is not an "egregious" breach of social norms; it is ordinary e-commerce and web browsing activity.

## III. PLAINTIFF FAILS TO STATE AN ECPA CLAIM

To state a claim under ECPA, a plaintiff must show that a defendant intentionally ***intercepted or endeavored to intercept*** the ***contents of an electronic communication*** through the use of a device. 18 U.S.C. §§ 2510 *et seq*. (emphasis added). The ECPA "also requires messages [to] be intercepted ***while in transit***," similar to CIPA's requirement. *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (emphasis added).

Not only does Plaintiff's ECPA claim fail because he does not allege any protectable "contents," but the one-party consent exemption serves as an independent bar to his ECPA claim and he cannot demonstrate that Snap contemporaneously intercepted any communications "in transit."

### A. Standards for Interpreting the ECPA

Because ECPA is a penal statute, the rule of lenity requires that it "should be interpreted in favor of the alleged violator." *See Warden v. Kahn*, 99 Cal.App.3d 805, 817 n.3 (1979); *see also Harrott v. County of Kings*, 25 Cal.4th 1138, 1154 (2001) (when "the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage"); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (rule of lenity is applicable to federal statutes).

Even though claims arising under wiretapping statutes are frequently asserted in private civil actions, the "interpretations courts adopt while adjudicating those [civil] actions could affect the extent to which people or companies are subject to criminal

liability," so it "is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) (Chhabria, J.). Thus, to the extent there is any ambiguity as to the scope of such statutes, the statutory provisions should be construed narrowly and any ambiguities should be resolved in the defendant's favor.

**B. <u>No Protectable "Contents" of Communications</u>**

ECPA prohibits the interception of "contents" of communications. 18 U.S.C. § 2510(8) (defining protectable "contents" as "any information concerning the substance, purport, or meaning of [a] communication."). The Ninth Circuit has made clear that the "contents" of a communication means "the ***intended message conveyed*** by the communication" as opposed to "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (emphasis added).

Here, the information Plaintiff alleges that Snap supposedly collected from him was "record" information: his "email address, phone number, and device information." Compl. ¶ 153; *Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022) (a person's name, address, email, and other customer identifying information are unprotected "record" information). None of that basic contact or device information conveys the "substance, purport, or meaning" of a communication, and therefore, does not constitute protectable "content" under the ECPA. *See In re Zynga Priv. Litig.*, 750 F.3d at 1106 (names, addresses, subscriber numbers, and customer identities are record information rather than protectable "content"); *Hughes,* 2024 WL 5179916, at *4 (device and browser information are not protectable "content"). Plaintiff never even alleges that he entered his email address, phone number, or any other identifying information into any fields on any website such that the Snap Pixel could capture his personalized information, so it would be unreasonable to infer that any such "contents" were actually "intercepted" by Snap. *See Hughes*, 2024 WL 5179916, at *4.

Plaintiff alleges that he visited Thursdayboots.com and Zillow.com, but does not provide any information about the communications, if any, that he made while on those websites. The mere act of visiting a website is not a communication; it is the online equivalent of walking into a store. As part of his class allegations, Plaintiff later alleges that Snap intercepted "Plaintiff and Class members' [communications] regarding their food and restaurant preferences, health concerns, [and] consumption of media." Compl. ¶ 190. Not only does Plaintiff fail to allege that he or any class member actually provided any website with that type of information, but it is also unreasonable to infer that he provided such personal preferences or health concerns to a shoe company or real estate listing website. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (a court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (citation omitted). Even though he alleges that "real estate interests" (*id.* ¶ 190) were supposedly intercepted, he never specifically alleges that he provided Zillow, or any website, with such real estate interests, what personal information those interests revealed, or how such interests could be considered "contents" under ECPA.

Plaintiff appears to be trying to prop up an ECPA claim on the basis of data he believes the Snap Pixel is ***capable*** of transmitting, without actually alleging that ***he***, ***himself***, shared any of that data with the websites he visited. For the same reasons discussed in Section I.A.1 above, Plaintiff's last-ditch effort to allege how "record" information could ***hypothetically*** be intercepted (IP addresses, URLs, button clicks, and geographic locations, *e.g.*, Compl. ¶¶ 23, 38, 70, 78, 79) does not salvage his ECPA claim. *See King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4-5 (E.D. Cal. June 9, 2025) (dismissing wiretap claim where plaintiff provided hypothetical examples of URLs alleged intercepted by Meta but failed to allege ***she*** actually "conducted those searches or visited the websites provided in the examples."); *see also Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) ("there is no legal[ly] protected privacy interest in IP addresses"); *Yoon v.*

*Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) (mouse clicks do not constitute protectable "content"); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1062 (data such as time, duration, and location data are not protectable "content").

**C. <u>The One-Party Consent Exemption Bars Plaintiff's Claim</u>**

Even if the Court found that the "communications" alleged here were protectable under ECPA, the communications that Plaintiff alleges were intercepted occurred between Plaintiff and the website operators; thus, the website operators, as parties to those communications necessarily consented to the transmission of the alleged data to Snap. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 ("[T]he consent of one party is a complete defense to a Wiretap Act claim.").

In fact, the Complaint itself concedes that website operators ***voluntarily*** implemented the Snap Pixel and chose to send the data to Snap for advertising, analytics, attribution, and audience-targeting purposes. *See, e.g.*, Compl. ¶ 23. Thus, any alleged interception occurred with the consent of at least one party to the communications—the website operator—which defeats ECPA claims against the party that allegedly operates the pixel technology, such as Snap. *See, e.g.*, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (finding one-party consent defense barred ECPA claim against Google because such a defense "leap[s] off the page"—namely, the "alleged interception . . . only occurs because the [website operators] choose to install Google source code on their web properties," which "must mean the [website operators] consented to the operation of Google source code."); *Pena v. GameStop, Inc.*, 670 F.Supp.3d 1112, 1118 (S.D. Cal. 2023) ("Because [website operator] was the party that was meant to, and did, receive Plaintiffs' communications on the Website," under the party exemption rule, "any alleged interception of the communications is not actionable.").

**D. <u>No Contemporaneous Interception "In Transit"</u>**

For a communication to be "intercepted" in violation of ECPA, it must be

"acquired ***during transmission***" from the sender to the recipient, not while it is in electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). An "acquisition" occurs when the contents of a communication are "captured or redirected in any way." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009). Thus, the term "intercept" under ECPA has a "narrow definition" limited to "acquisition ***contemporaneous with*** transmission." *Konop*, 302 F.3d at 878 (emphasis added); *Licea*, 659 F. Supp. 3d at 1084 (ECPA requires interceptions or attempts to read contents while "in transit"). Simply acquiring electronic communications, without more, is insufficient to establish the "in transit" or "during transmission" requirement to state a claim under ECPA. *See id.*

As explained above, the intended recipients of Plaintiff's alleged communications are the website operators. However, the Complaint does not even allege that any supposed interception by Snap occurred in real time, in transit, or contemporaneous with any "communication" between Plaintiff and any website operator. To the contrary, Plaintiff alleges that the information Snap allegedly intercepted is only used or disclosed ***after*** such information has already reached any website operator (the intended recipient). Compl. ¶ 190 (alleging Snap intercepted communications and "***then*** [the information was] added to consumer profiles…"). After-the-fact acquisition is not the type of interception actionable under ECPA. *See Adler*, 2021 WL 4805435, at *4 (defendant's alleged access of that communication ***upon the completion*** of its transmission to the [recipient] is not the sort of act contemplated by [ECPA].") (emphasis added).

Put simply, Plaintiff's allegation that Snap "use[d]" or "disclose[d]" information to build "consumer profiles" only after the transmission of that information to a website was complete does ***not*** plausibly allege that Snap acquired the contents of any communication "contemporaneous with" its transmission. Compl. ¶¶ 190-191; *see Konop*, 302 F.3d at 878. Plaintiff has therefore failed to allege facts to support an inference that the contents of any communication were ever intercepted "in

transit" by Snap within the meaning of ECPA. *See Sisti v. Bosley Inc.*, 831 F. Supp. 3d 979, 991 (C.D. Cal. 2026) ("Plaintiff has failed to provide any support for the illogical notion that Bosley could have disclosed Plaintiff's information to third parties ***while*** that information was still in transit from Plaintiff ***to Bosley***.") (emphasis in original); *Adler v. Community.com*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing wiretap claim because plaintiff did not state a "plausible allegation that [d]efendant acted to learn the contents of the message while they were, in a technical sense, ***in transit or in the process of being received***") (emphasis added); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing ECPA claim where there were no allegations giving rise to a plausible inference defendant "captured or redirected . . . communications while in transit").

For each of these reasons, the ECPA claim should be dismissed.

## CONCLUSION

The Complaint has much to say about what tracking technologies supposedly can do, but remarkably little to nothing to say about what actually happened to Plaintiff. Despite nearly 200 paragraphs of allegations, it never bridges the gap between the two. That disconnect is fatal—to both Article III standing and every claim asserted. Snap respectfully requests that the Court grant its Motion and dismiss the Complaint in its entirety.

Dated: August 17, 2026

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Patrick Hammon*

PATRICK HAMMON
ANDREW J. WU

Attorneys for Defendant,
SNAP INC.